UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

NORTHEAST INDUSTRIAL DEVELOPMENT
CORPORATION,

                Debtor,

14-cv-7056 (NSR)

OPINION & ORDER

NORTHEAST INDUSTRIAL DEVELOPMENT
CORPORATION,

                Plaintiff,

    -against-

PARKSTONE CAPITAL PARTNERS, LLC,
et al.,

                Defendants.

NELSON S. ROMÁN, United States District Judge:

       This matter arises out of the chapter 11 case of Northeast Industrial Corporation ("Debtor," "Northeast Industrial," or "Plaintiff"). Plaintiffs filed a complaint and initiated an adversary proceeding in the Bankruptcy Court against Defendants ParkStone Capital Partners, LLC ("ParkStone"), Parkston Capital Partners II, LLC ("ParkStone II"), and Jonathan Childs (collectively, the "ParkStone Defendants"), as well as Receiver Vincent Rippa, on January 31, 2014. The ParkStone Defendants filed an answer to the complaint on February 28, 2014, and Defendant Rippa filed his answer to the complaint on March 6. Thereafter, on April 22, the ParkStone Defendants filed a motion seeking to dismiss the complaint.

       On July 29, 2014, Chief Judge Cecelia G. Morris of the U.S. Bankruptcy Court for the Southern District of New York issued Proposed Findings of Fact and Conclusions of Law (the

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/16/2015

"Decision") in favor of Defendants, recommending that Counts 1-4 of Plaintiff's Complaint be dismissed.[1] (*See* Mem. Decision and Proposed Findings of Fact and Conclusions of Law Granting ParkStone Defs.' Mot. to Dismiss Compl. [hereinafter "Decision"], ECF No. 1.) Pursuant to Federal Rule of Bankruptcy Procedure 9033(b) and Local Bankruptcy Rule 9033-1, Northeast Industrial timely objected to the Bankruptcy Court's Decision. (Pl.'s Objections, ECF No. 2.) Defendants submitted a response to Plaintiff's objections. (Defs.' Resp., ECF No. 3.) For the reasons that follow, the Court adopts the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law and the ParkStone Defendants' motion to dismiss is GRANTED.

## BACKGROUND

The Court, having reviewed the facts and description of the proceedings in the Bankruptcy Court contained in the "Background" section of Chief Judge Morris's Decision, adopts that section of the Decision in full and otherwise assumes familiarity with the procedural history of this action. Neither party has submitted any specific objections to the "Background" section of Chief Judge Morris's Decision or to the findings of fact contained therein.

## RELEVANT LEGAL STANDARDS

### I.    Review of Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law

There are two kinds of bankruptcy proceedings under 28 U.S.C. § 157(b): "core"

---

[1] Chief Judge Morris's Decision also dismissed Count 6 as against the ParkStone Defendants. As Chief Judge Morris noted, Count 6 of the Complaint is plainly a core proceeding in which the Bankruptcy Court could enter a final order. (Decision at 13.) Count 6 of the Complaint requested disallowance of a portion of ParkStone's proof of claim for its prepetition secured debt, and Section 157(b)(2)(B) provides that the "allowance or disallowance of claims against the estate" is a core proceeding. 28 U.S.C. § 157(b)(2)(B); *see also In re Salander-O'Reilly Galleries*, 453 B.R. 106, 118 (Bankr. S.D.N.Y. 2011) ("[A]llowance of claims is indisputably the realm of the bankruptcy court."). "Nothing in [*Stern*] removes the authority of the bankruptcy court to enter a final order or judgment in such matters." *Wilson v. Residential Capital, LLC (In re Residential Capital, LLC)*, No. 12-12020, 2014 WL 3057111, at *1 n.1 (Bankr. S.D.N.Y. July 7, 2014).

proceedings and "non-core" proceedings. While a bankruptcy court does not have authority under Article III of the Constitution to issue final orders and judgments in non-core proceedings, the bankruptcy court may submit proposed findings of fact and conclusions of law to the district court. 28 U.S.C. § 157(c)(1) (in non-core proceedings "otherwise related to a case under title 11 . . . the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court"); *see also Exec. Benefits v. Arkison*, 573 U.S. __, 134 S. Ct. 2165, 2168 (2014); *Stern v. Marshall,* 564 U.S. __, 131 S. Ct. 2594, 2620 (2011); *In re Orion Pictures Corp.,* 4 F.3d 1095, 1100–01 (2d Cir. 1993) (in non-core proceeding, "the bankruptcy court is only empowered to submit proposed findings of fact and conclusions of law to the district court for *de novo* review"). The district court may then enter a final order or judgment after "considering the bankruptcy judge's proposed findings and conclusions" and "reviewing de novo those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1). The district court "may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions." Fed. R. Bankr. P. 9033(d).

This Court reviews the findings of fact and conclusions of law of the Bankruptcy Court in this matter *de novo* because this is a non-core proceeding. *See* Decision at 12 ("[T]he claims asserted against the ParkStone Defendants are necessarily at least 'related to' the bankruptcy case and fall within the [Bankruptcy] Court's noncore jurisdiction."); *see also* Fed. R. Bankr. P. 9033(d) ("The district judge shall make a de novo review . . . of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule."); *In re Adelphia Communications Corp.*, No. 02-41729, 2015 WL 1208588, at *6 (S.D.N.Y. Mar. 17, 2015); *In re Prudential Lines, Inc.*, 170 B.R. 222, 228

(S.D.N.Y. 1994) ("In non-core related proceedings, the district court reviews *de novo* both the factual findings and the legal conclusions of the bankruptcy court.").

## II.    Motion to Dismiss

The ParkStone Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6); because they have filed an answer to the complaint, however, the Court construes their motion as seeking dismissal under Federal Rule 12(c). "[A] motion to dismiss for failure to state a claim . . . that is styled as arising under Rule 12(b) but is filed after the close of pleadings, should be construed by the district court as a motion for judgment on the pleadings under Rule 12(c)." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).

Under Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial— a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Courts evaluate a Rule 12(c) motion for judgment on the pleadings under the same standard as a Rule 12(b)(6) motion for failure to state a claim. *U.S. ex rel. Krol v. Arch Ins. Co.*, 46 F. Supp. 3d 347, 349 (S.D.N.Y. 2014) (citing *Nicholas v. Goord*, 430 F.3d 652, 657 n.8 (2d Cir. 2005)). "To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Entegra Power Grp. v. Dewey & Leboeuf LLP (In re Dewey & Lebouef LLP)*, 493 B.R. 421, 427 (Bankr. S.D.N.Y. 2013) (quoting *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988)) (internal quotation marks omitted).

Similarly, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must provide grounds upon which their claim rests through "factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc.*, 493 F.3d at 98 (quoting *Twombly*, 550 U.S. at 555 (2007)). In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In applying this standard, a court should accept as true all well-pled factual allegations, but should not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id*. Additionally, a court should also draw all reasonable inferences in favor of the non-moving party in deciding such a motion. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). A court, however, should "giv[e] no effect to legal conclusions couched as factual allegations." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

## DISCUSSION

### I.  Plaintiff's Objections

The Court must review *de novo* all portions of the Decision "to which specific written objection has been made." Fed. R. Bankr. P. 9033(d). Plaintiff objects to the Decision on the grounds that: (1) "[n]umerous conclusions of law fail to incorporate the facts presented in this adversary proceeding by the plaintiff;" and (2) "[t]he decision fails to take into consideration all of the facts set forth in the Complaint, [and] all documents that may be taken judicial notice of by the Court . . . in a light most favorable to the plaintiff." (Pl.'s Objections at 2.) Specifically,

5

Plaintiff objects to, and seeks to strike the following paragraphs of the Decision: paragraphs 1, 2, and 3 of the section labeled "**i. Count 1 (Fraud)**," found on pages 19-20 of the Decision; paragraphs 3 and 5 of the section labeled "**ii. Count 2 (Imposition of the Loan Workout Agreement)**,"[2] found on pages 21-23; paragraphs 2, 3, and 4 of the section labeled "**iii. Count 3 (Unjust Enrichment)**,"[3] found on pages 23-24; paragraphs 1, 2, 3, 4, and 5 of the section labeled "**iv. Count 4 (Imposition of a Joint Venture)**,"[4] found on pages 25-27. (Pl.'s Objections at 2.)

    A.    *Count 1 (Fraud)*

In its first cause of action, Plaintiff alleges that the ParkStone Defendants falsely represented to Plaintiff (and Plaintiff's principal) that if Plaintiff completed certain investments and took certain actions related to the property at issue, ParkStone would reduce the mortgage loan pay-off amount and permit an additional 24-month forbearance period pursuant to an agreement negotiated between the parties (the "Loan Workout Agreement"). (*See* Compl. ¶¶ 23-31.) These representations were false, Plaintiff alleges, because the ParkStone Defendants never intended to comply with the terms of the Loan Workout Agreement, but instead waited until Plaintiff had performed the investments and rented the premises to present Plaintiff with an entirely different agreement than the one originally contemplated between the parties. (Compl. ¶ 27.) Plaintiff also contends that the ParkStone Defendants knew this representation was false when they made it. (Compl. ¶ 28.)

---

[2] Plaintiff lists the paragraphs objected to in this section as paragraphs 3 and 6; however, this section contains only five paragraphs, so the Court construes Plaintiff's objection to be to paragraphs 3 and 5.

[3] Plaintiff lists paragraphs 2, 3, and 5. This section contains only four paragraphs total, so the Court construes Plaintiff's objection to be to paragraphs 2-4.

[4] Plaintiff lists paragraphs 1, 2, 3, 4, 5, and 6. This section contains only five paragraphs total, so the Court construes Plaintiff's objection to be to paragraphs 1-5.

Under New York law, "[t]he elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979 (N.Y. 2009). "General allegations that [a party] entered into a contract while lacking the intent to perform it are insufficient to support [such a] claim." *New York Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 769 (N.Y. 1995). A claim that a party entered into a contract that they never intended to honor is generally duplicative of a claim for breach of contract, and can only be maintained as a fraud claim in certain situations if: "(1) the defendant owed a legal duty to the plaintiff 'separate from the duty to perform under the contract'; (2) the defendant makes a fraudulent misrepresentation that is 'collateral or extraneous' to the contract; or (3) the plaintiff seeks special damages unrecoverable as contract damages." *Cougar Audio, Inc. v. Reich*, No. 99 Civ. 4498, 2000 WL 420546, at *6 (S.D.N.Y. Apr. 18, 2000) (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996)). Thus, "[a] contracting party's 'mere promissory statement' that he will live up to his contractual obligations generally cannot be the basis of a fraud claim." *Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F. Supp. 117, 123 (S.D.N.Y. 1996) (quoting *Deerfield Communications Corp. v. Chesebrough–Ponds, Inc.*, 502 N.E.2d 1003, 1004–05 (N.Y. 1986)); *see also WIT Holding Corp. v. Klein*, 724 N.Y.S.2d 66, 68 (App. Div. 2001) ("[A] mere misrepresentation of an intention to perform under [a] contract is insufficient to allege fraud.").

Assuming, *arguendo*, that Plaintiff's first cause of action complies with the dictates of Federal Rule of Civil Procedure 9(b), the claim still fails as a matter of law. Plaintiff's claim is fundamentally a claim for breach of contract; Plaintiff cannot state an independent tort claim for fraud, based on the alleged false representation by the ParkStone Defendants of their intent to

7

perform by "simply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder." *Best W. Int'l, Inc. v. CSI Int'l Corp.*, No. 94 Civ. 0360, 1994 WL 465905, at *4 (S.D.N.Y. Aug. 23, 1994).

As an additional matter, Plaintiff objected to Chief Bankruptcy Judge Morris's statements regarding Plaintiff's allegations in this action. One example that Plaintiff points to is the statement in the Decision that "the debtor alleges that ParkStone falsely claimed that it would agree to accept a reduced payoff of the Note ($1.5 million and later $2.2 million)." Specifically, Plaintiff argues that the Bankruptcy Court failed to review the facts presented in the light most favorable to Plaintiff because "[t]here is nothing being 'alleged' here by the debtor as the offer was firm, solid and in writing." (Pl.'s Objections at 17.) Plaintiff's argument is inapposite. Contrary to Plaintiff's contention, the "facts" as contemplated in the Decision are indeed allegations, as they are statements of factual matter, contained in a pleading, that have not yet been proved. *See* "Allegation," *Black's Law Dictionary* (10th ed. 2014) ("**1.** A declaration that something is true; esp., a statement, *not yet proved*, that someone has done something wrong or illegal. **2.** Something declared or asserted as a matter of fact, esp. in a legal pleading; a party's formal statement of a factual matter as being true or provable, *without its having yet been proved*; averment.") (emphasis added). The requirement that the Court assume the alleged facts to be true for the purposes of the motion to dismiss does not render Plaintiff's factual allegations "proved." Thus, Judge Morris's use of the word "alleged" does not show that she failed to review the facts presented in the light most favorable to Plaintiff. Further, this Court's *de novo* review of Plaintiff's fraud claim yields a determination that the claim fails as a matter of law, even if the allegations are accepted as true and all reasonable inferences are drawn in Plaintiff's favor.

B.      *Count 2 (Imposition of the Loan Workout Agreement)*

Plaintiff's second cause of action pertains to the alleged Loan Workout Agreement between the parties to modify the terms of the note and mortgage. Plaintiff alleges that "the parties had agreed to all essential terms of the agreement and mutually intended to be bound" by the agreement, as evidenced by their communications and actions, and thus the Court "should impose the terms of the contract set forth [in the Complaint] on the parties." (Compl. ¶ 36.)

New York General Obligations Law § 5-703(3) requires the existence of a signed writing to enforce an agreement for an interest in real property. *See* N.Y. Gen. Oblig. Law § 5-703(3). Thus, in New York, the modification of a mortgage is subject to the statute of frauds and any such modification must be in writing and signed by the party to be charged. Such a writing must evidence "the full intention of the parties . . . without recourse to parol evidence." *Dahan v. Weiss*, 991 N.Y.S.2d 119, 120 A.D.3d 540, 542 (App. Div. 2014). Additionally, § 15-301(1) provides that a contract with a written modification clause, such as the construction loan note and construction loan mortgage in this action, "cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought." *See* N.Y. Gen. Oblig. Law § 15-301(1); *Richardson & Lucas, Inc. v. New York Athletic Club of City of N.Y.*, 758 N.Y.S.2d 321, 304 A.D.2d 462, 463 (App. Div. 2003) (quoting N.Y. Gen. Oblig. Law § 15-301(1)).

Plaintiff alleges that the Loan Workout Agreement modifying the mortgage in this action was written, not oral as found by the Bankruptcy Court, because of a series of emails discussing the loan modification, which Plaintiff has attached to the Complaint. (Pl.'s Objections at 20.) Although Plaintiff has attached to its Complaint evidence of e-mails[5] exchanged between

---

[5] "[A]n e-mail will satisfy the statute of frauds so long as its contents and subscription meet all requirements of the governing statute." *Naldi v. Grunberg*, 80 A.D.3d 1, 3 (1st Dep't 2010).

Defendant Childs and Plaintiff's principal referencing construction that was occurring and a "24-month agreement,"[6] (Compl. Ex. E), and has set forth the alleged Loan Workout Agreement terms in the Complaint, (Compl. ¶ 12), the e-mails provided fail to state the essential terms of a complete agreement, and are therefore insufficient on their own to satisfy § 5-703(3). Even if the agreement was in the process of being drafted by ParkStone's attorney, as Plaintiff alleges, Plaintiff still cannot produce a writing evidencing the full intention of the parties that is signed by Defendants as required by the statute of frauds, because, by Plaintiff's own admission, the "original workout agreement" was never produced in written form. (*See* Compl. ¶ 17.) Accordingly, Plaintiff would need to rely on parol evidence in order to satisfy § 5-703(3)'s writing requirement and thus the alleged Loan Workout Agreement modifying the mortgage does not satisfy the statute of frauds.

Nevertheless, "[a]n agreement which violates the statute of frauds may nonetheless be enforceable where there has been part performance unequivocally referable to the contract by the party seeking to enforce the agreement." *Barretti v. Detore*, 944 N.Y.S.2d 166, 95 A.D.3d 803, 806 (App. Div. 2012) (internal citations and quotations omitted). "'Unequivocally referable' conduct is conduct which is 'inconsistent with any other explanation.'" *Id*. (quoting *745 Nostrand Retail Ltd. v. 745 Jeffco Corp.*, 854 N.Y.S.2d 773, 50 A.D.3d 768, 769 (App. Div. 2008)). "When analyzing part performance for potential invocation of equitable principles, courts should only consider the actions and detrimental reliance of the party seeking enforcement of the contract." *Post Hill, LLC v. E. Tetz & Sons, Inc.*, 997 N.Y.S.2d 525, 122 A.D.3d 1126, 1128 (App. Div. 2014).

---

[6] Notably, the only reference to 24 months (the additional forbearance period that Plaintiff alleges was part of the Loan Workout Agreement) is in an email from Plaintiff's principal to Defendant Childs, not the other way around. Thus, even if the Court were to find that this essential term of the alleged agreement was set forth in writing in the emails provided, it is not signed by the party *against whom enforcement is sought*.

Despite Plaintiff's contentions, Plaintiff's actions are not "unequivocally referable" to the agreement and are not "inconsistent with any other explanation." Plaintiff completed construction of a building on the property and entered into a deal with a broker to locate and secure a new tenant for the property. These actions are not "unintelligible or at least extraordinary, explainable only with reference to" the alleged Loan Workout Agreement. *Anostario v. Vicinanzo*, 450 N.E.2d 215, 216 (N.Y. 1983). Plaintiff's actions were attempts to maximize the property's value and obtain a source of cash flow; this is consistent with its obligations under the note and mortgage, and can hardly be said to be "inconsistent with any other explanation." *Barretti*, 944 N.Y.S.2d 166, 95 A.D.3d at 806. The alleged Loan Workout Agreement is therefore barred by the statute of frauds and unenforceable.

C.      *Count 3 (Unjust Enrichment)*

In its third cause of action, Plaintiff seeks from the Court the imposition of "a constructive contract between the parties to prevent the defendants' unjust enrichment," alleging that the ParkStone Defendants "obtained a substantial benefit by inducing the Plaintiff to continue to perform upon a promise to reduce the [Loan Workout] agreement to writing." (Compl. ¶¶ 40-41.)

In order to prevail on an unjust enrichment claim in New York, "a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)). "The 'essence' of such a claim 'is that one party has received money or a benefit at the expense of another.'" *Kaye*, 202 F.3d at 616 (quoting *City of Syracuse v. R.A.C. Holding, Inc.*, 685 N.Y.S.2d 381, 381 (App. Div. 1999)). Because an unjust enrichment action is a "quasi-contract claim," *Goldman v. Metropolitan Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y. 2005), "the

11

existence of an express contract between the [parties] governing the particular subject matter of [plaintiff's] claim for unjust enrichment precludes the plaintiff from maintaining a cause of action [for unjust enrichment]," *Best W. Int'l, Inc. v. CSI Int'l Corp.*, No. 94 Civ. 0360, 1994 WL 465905, at *7 (S.D.N.Y. Aug. 23, 1994) (quoting *Metro. Elec. Mfg. Co. v. Herbert Constr. Co.*, 583 N.Y.S.2d 497, 498 (App. Div. 1992)); *see also IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 274 (N.Y. 2009) ("Where the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded."); *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.").

In the instant action, the note and mortgage are valid and enforceable contracts governing the subject matter of the suit, and therefore preclude Plaintiff from making an unjust enrichment claim against the ParkStone Defendants as a matter of law. *See, e.g.*, Hinds v. Option One Mortg. Corp., No. 11 Civ. 06149, 2012 WL 6827477, at *6-7 (E.D.N.Y. Dec. 6, 2012), *report and recommendation adopted*, No. 11 Civ. 06149, 2013 WL 132719 (E.D.N.Y. Jan. 10, 2013); *Scott v. Saxon Loan Servs.*, No. 09 Civ. 2119, 2010 WL 1529281, at *11-12 (E.D.N.Y. Apr. 9, 2010) ("Since plaintiff's claims arise out of the same subject matter as the mortgage and note, plaintiff cannot establish an unjust enrichment claim against defendant, [the mortgagee]'s assignee, as a matter of law."). Further, a lender can only recover monies that it is legally entitled to through a foreclosure sale, so a lender cannot be *unjustly* enriched simply by exercising its rights pursuant to a valid note and mortgage. *See, e.g., Mazeh Const. Corp. v. VNB N.Y. Corp.*, No. 500728/11, 2012 WL 2097690, at *6 (N.Y. Sup. Ct. June 11, 2012) ("Upon foreclosure, the [lender] can

only recover the loan funds they advanced to [the mortgagor] and . . . expenses. Any surplus recovered upon the sale of the Property would be available only to [the mortgagor], as the owner of the equity, and any lienors or others having a claim against the Property.").

Thus, the existence of the note and mortgage means that Plaintiff's unjust enrichment claim must be dismissed, as it fails as a matter of law.

> D. *Count 4 (Imposition of a Joint Venture)*

In its fourth cause of action, Plaintiff alleges that the parties "entered into a [sic] intentional and voluntary joint venture . . . and therefore, the contract set forth [in the Complaint] for re-sale of the property to the Plaintiff should be enforced." (Compl. ¶ 43.) Plaintiff further alleges that each party made a contribution to the venture, the parties intended to share the profits of the completed venture, each party had a joint proprietary interest and right of mutual control over the project, and the parties were engaged in a single business transaction. (Compl. ¶¶ 44-47.)

A party seeking to establish the existence of a joint venture under New York law must demonstrate five elements: (1) a specific agreement between two or more persons to carry out an enterprise for profit; (2) evidence in the agreement of the parties' intent to be joint venturers; (3) a contribution of property, financing, skill, knowledge, or effort by each party to the joint venture; (4) some degree of joint control over the venture by each party; and (5) the existence of a provision for the sharing of both profits and losses. *Cohen v. Treuhold Capital Grp., LLC (In re Cohen)*, 422 B.R. 350, 377 (E.D.N.Y. 2010) (citing *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 67-68 (2d Cir. 2003)). Failure to establish any single element is fatal to the claim of the party seeking to establish the joint venture. *See Kidz Cloz, Inc. v. Officially For Kids, Inc.*, 320 F. Supp. 2d 164, 171 (S.D.N.Y. 2004).

Plaintiff's claim encounters at least two fatal problems. First, the Complaint fails to allege that the parties agreed to share losses in addition to sharing profits. "Under New York law, where a plaintiff fails to plead 'a mutual promise or undertaking to share the burden of losses of the alleged enterprise,' a cause of action alleging a joint venture should be dismissed." *Jacobs v. Baum*, No. 07 Civ. 167, 2008 WL 819037, at *6 (N.D.N.Y. Mar. 24, 2008) (quoting *Latture v. Smith*, 766 N.Y.S.2d 906, 906-07 (App. Div. 2003)). This is because the "sharing of both profits and losses . . . is essential to the creation of a joint venture." *Cohen*, 422 B.R. at 377 (citing *Williams v. Forbes*, 571 N.Y.S.2d 818, 819 (App. Div. 1991)). Second, even if Plaintiff amended the Complaint to cure this first defect, the claim would fail as a matter of law because the Complaint alleges that the parties intended to reduce the Loan Workout Agreement to writing but never did so. (*See* Compl. ¶¶ 12-15, 17.) Under New York law, a joint venture claim fails as a matter of law where "the parties intended to finalize their agreement in a writing[] which never materialized." *Langer v. Dadabhoy*, 843 N.Y.S.2d 262, 263 (App. Div. 2007) ("[D]ocumentary evidence in the form of e-mails conclusively established that the parties intended to finalize their agreement in a writing, which never materialized . . . . As such, there was no mutual assent or meeting of the minds as to the proposed joint venture."). Plaintiff's allegations, combined with the emails attached to the Complaint, conclusively establish that the parties intended to finalize their agreement in a writing which never materialized. As a result, Plaintiff's joint venture claim fails as a matter of law and must be dismissed.

## II.     Portions of the Decision Not Specifically Objected to by the Parties

Having reviewed Chief Judge Morris's Decision, as well as the objections and responses submitted by the parties, the Court adopts all other portions of the Decision not specifically objected to by Plaintiff (as enumerated in the prior section of this Opinion) and which have not otherwise been discussed in this Opinion.

**CONCLUSION**

For the foregoing reasons, the Court adopts Chief Judge Morris's Proposed Findings of

Fact and Conclusions of Law and grants Defendants' motion to dismiss the complaint. The Clerk

of Court is directed to enter judgment accordingly and close this case.

Dated:   June 16, 2015                                        SO ORDERED:
          White Plains, New York

                                                 NELSON S. ROMÁN
                                  United States District Judge

15